Mr. Justice CATRON
delivered the opinion of the court; and after stating facts, and referring to Ross’s entry of 1810, proceeded thus:
This entry was surveyed and the survey recorded in 1817. The entry and survey are regular, and free from objection on their face; they recite the warrants, and the boundaries of the survey are distinctly defined. It is not indicated on the records of the surveyor that the warrants had been merged in the first entry and the Virginia patents, nor that the warrants were absent when the entry and survey were made. In this condition Ross’s title stood till 1837, when Samuel Saunders entered four hundred and twenty-eight acres of the land surveyed for Ross. Saunders’s entry was surveyed on the same day it was made. On the 20th day of November, 1838, a patent was issued by the United States to Saunders, and on the same day a patent issued to Niswanger, the assignee of Ross’s entry and survey. This patent recites the fact that a previous patent had been issued by the Commonwealth of Virginia, founded on warrants, in part, that were withdrawn because of the loss by the interference with Henderson’s Grant in the Kentucky district.
A principal defence relied on by the respondents was, that the act of Congress of 1807 withheld the land surveyed for Ross from location by Saunders; that his entry was void, and that the bill should be dismissed for this reason. But the Supreme Court of Ohio held that the act of 1807 was no protection to Ross’s survey, and decreed that the land should be conveyed to Saunders’s heirs; and on this part of the case *438 an appeal was prosecuted to this court, under the twenty-fifth section of the Judiciary Act.
The record shows that the act of Congress was drawn in question and relied on as a defence, and that the defence was rejected by the State court.
The act of 1807, which we are called on to construe and apply to the facts coming within our cognizance, gives the further time of three years for making locations of lands in the military district of Ohio, and five years for the return of surveys and warrants to the office of the War Department; and then provides, “ That no locations, as aforesaid, within the above-mentioned tract, shall, after the passage of this act, be made on tracts of land for which patents had previously issued, or which had been previously surveyed; and any patent which may, nevertheless, be obtained for land located contrary to the provisions of this section, shall be considered as null and void.”
By subsequent acts of Congress, further time was given to return surveys, so that Boss’s survey is not open to objection for not having been made and recorded in time, nor was any objection made in the court below on this ground; but the decree proceeded on the assumption that the warrants on which the entry and survey of Boss purported to be founded, were merged in the previous patent of one thousand acres; and that there were no valid warrants to sustain the survey, which was made without authority, and void; and therefore could claim no protection by virtue of the act of 1807.
Boss's entry and survey were made by the proper officer and in the proper office, purporting to be made on real warrants, and bearing on their face every mark of regularity.
When a survey is void for circumstances not appearing of record on its face, and which must be proved by extrinsic evidence from different sources, then a second enterer cannot be heard to adduce such proof, because he is met by the statute, and not allowed to obtrude on the existing survey by a second location. He can obtain no interest in the land to give him a standing in court. The government can justly say to him, “ You are a stranger and must stand aside; this *439 land is withdrawn from location; you cannot be heard.” If the grantee, Ross, lost part of his land by Henderson’s grant, and his warrants were merged by this misfortune, equity required that Congress should declare his survey to be valid by a curative act. This is the principle governing the decisions in the cases of Galloway v. Finley (12 Peters, 294), and McArthur v. Dun (7 Howard, 264), where the entries, surveys, and patents had been made to dead men, and were void of course for want of a grantee; yet this court held that the act of 1807 appliéd, and that a second entry on the first survey was void. In the case of Stubblefield v. Boggs (2 Ohio State Reports, 216), the same doctrine is maintained.
"We hold that the survey of Ross was protected, and that Saunders’s entry, survey, and patent were void, and order that the judgment of the Supreme Court of Ohio be reversed, and that the cause be remanded to that court, to be proceeded with in conformity to this opinion.
Remanded accordingly.